reason of the closing of a highway. The statute provides that the municipal corporation may, with the approval of the company, acquire, by purchase, any lands, rights, or easements necessary or required for the purpose of carrying out the provisions of sections 60, 61, and 62 of the railroad act (Laws 1897, pp. 794–797, c. 754); but, if unable to do so, shall acquire such lands, rights, or easements by condemnation either under the condemnation law (Code Civ. Proc. §§ 3357–3384), or under the provisions of the charter of such municipal corporation; and provides for notice to the company of the proceedings. The claim is made by the petitioner that it is the duty of the municipality to acquire his rights before closing the street. The statute provides two ways of acquiring property by a municipal corporation: First, by agreement with the property owners, and, in case of failure to agree, by condemnation proceedings. Any taking of property, except by either of the ways mentioned, would be illegal, and subject the parties participating in such appropriation to an action. While it is true that a mandamus should issue where a public officer or body neglects a plain duty, yet the duty must be plain and clear, and in this case the claim is made that there is no taking of any property or rights of the petitioner. It is not quite clear that the court could, upon such an application as this, compel the municipality either to audit the claim or to commence condemnation proceedings. Each of these acts requires the preliminary determination on the part of the municipality that there was a taking of the property, and that there was a necessity therefor. If the petitioner's property had been taken illegally, he has a complete remedy at law, and it would seem that mandamus is not the remedy of the petitioner. The municipality certainly has no right to audit the claim, unless, in their judgment, the property is required for the purpose; in other words, it must be the subject of agreement between the parties as to the price before the municipal corporation alone can audit the claim. If such an agreement cannot be had, recourse must be had to the assessment by commissioners, and this must be done upon the application of the municipal corporation. It must be preceded by a determination that the rights in suit are necessary, and other preliminary requisites, in order to give jurisdiction under the condemnation law (Code Civ. Proc. §§ 3357–3384); and it is not quite clear how a mandamus can accomplish the purpose of the relator herein, namely, the payment of his claim for damages. As before stated, if his property has been illegally taken, he has a complete remedy against the municipality for the wrong done him, and this should be enforced by action, rather than than mandamus.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

J. S. Sitterly and H. V. Borst, for appellant.
S. W. Putman and R. B. Fish, for respondent Village of Fonda.
Thomas D. Watkins, for respondent New York Central & Hudson River Railroad Co.

PER CURIAM. Order unanimously affirmed, with $10 costs and disbursements.

---

(86 App. Div. 172.)

TURNER et al. v. MATHER et al.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. WILLS—CONSTRUCTION—ANNUITIES—GENERAL LEGACIES.
    Where testator directed his executor to reserve sufficient funds from his personal estate to pay certain annuities during the life of the annuitants, and on the death thereof to dispose of the principal fund as residuary estate, such annuities were general legacies only.

2. SAME—DEBTS—CHARGE ON LAND—INTENTION.
    Where, at the time of making his will, there was no proof that testator had reason to believe that his personal estate would be insufficient to pay

his debts and certain annuities payable out of the personalty, testator's real estate was not liable to contribution for the payment of such annuities on the personal property having been consumed in the payment of debts.

**3. SAME—AUTHORITY TO SELL REAL ESTATE—EFFECT.**

Where testator authorized his executors to sell certain real estate with intent to charge the same with the payment of debts and legacies, but such authority was only .in aid of the personal estate, and was not intended in exoneration thereof, general legatees were not entitled to have other real estate charged with the payment of their legacies to the extent that the personalty to the value of the real estate so charged was used in payment of debts.

Appeal from Special Term, Oneida County.

Action by Sarah J. Turner and another against Ida F. Mather and another. From a judgment in favor of defendants, plaintiffs appeal. Affirmed on opinion at Special Term.

The following is the Special Term opinion (MERWIN, J.):

Joshua Mather died in August, 1893, leaving a will, which was duly probated, and letters testamentary issued to Charles W. Mather, executor therein named, on September 11, 1893. In the first clause of the will the testator directed his executor to pay his debts and funeral expenses 'and the charges in reference to the settlement of his estate as he might deem proper. In the second clause he gave $1,200 to the Cemetery Association for the benefit of his burial. lot, which in the third clause he gave to his nephew Charles W. Mather. In the fourth clause he gave to the said Charles all his personal clothing and jewelry, and all his personal property in his house where he resided, and all which might be on his homestead and in the buildings thereon at the date of his death. In subsequent clauses prior to the eighteenth, he gave general legacies, mainly to relatives, to the amount of $16,600. In the twenty-first clause he gave to his nephew Charles, in trust, "such an amount of my personal estate as shall, in his judgment, be sufficient to yield a net income of $200 annually, payable quarterly, and he is to pay said sum of $200 in quarterly payments of $50 to my nephew Warren Mather for and during his lifetime, but no payments to be made or paid to his estate for any unpaid interest at the date of his death, and the first installment of $50 of said income is to be paid to said Warren Mather three months from the date of my death." The eighteenth, nineteenth, and twentieth clauses were similar in form to the twenty-first, and provided annuities for two nieces and a nephew in the amount of $800 each. By the twenty-second clause provision was made that upon the death of any of the annuitants the trust fund should go into the residuum of the estate, and be disposed of as thereinafter stated. By the twenty-third clause Charles W. was given the use during his life of "all the rest, residue, remainder, and residuum of all my personal and real estate," and was to have the entire control and management as he might deem for the best interests of himself and the persons who, under the will, would be ultimately interested; and he could use it as he might deem best in any business, and repair and keep in proper condition the real estate; and he was authorized to make, by will, a disposition of the same as he might deem wise among his descendants, in such proportions and amounts as he might deem proper. If such disposition was not made by Charles, then the same was given "unto the persons whom he may leave as his next of kin and heirs at law at the date of his death, in the same manner and proportion as if my said nephew Charles W. Mather had been absolute owner thereof at the date of his death, and had died intestate and unmarried." By the twenty-fourth clause Charles W. was appointed sole executor, and authorized as such to sell and convey all real estate which the testator might own at the date of his death outside of the city of Utica. Charles W. Mather died in November, 1899, intestate. He left a widow and children. He seems to have paid the annuities up to the time of his death. He had not, however, set apart any portion of the personal estate as a trust fund to provide for the annuities, and no portion of the personal estate remained in his hands. The

personal property amounted to about the sum of $77,000, and the debts exceeded this amount.

It may be inferred from the course of the trial that the personal property had been used toward the payment of debts. There are debts still outstanding. There has been no judicial settlement of the estate. This action was commenced in October, 1900. The testator, at the time of his death, was the owner of real estate of the value of $200,000 and upwards, over and above incumbrances. This was mainly located in the city of Utica. There was a parcel in New York City, considerably incumbered, and one in Clifton Springs. These parcels have apparently been disposed of, and the amount realized, together with the personal property, did not, as the evidence tends to show, exceed the amount of the indebtedness of the estate. It is, in substance, claimed upon the part of the plaintiffs that it was the intention of the testator to charge upon his real estate the payment of his debts and money legacies, aside from the annuities, so far as might be necessary in order to leave enough of the personal estate to provide the necessary funds for constituting the annuity trusts, and that, therefore, if such was the intention, the personal estate, having been used to pay debts, and thus relieving the real estate, should be restored from the real estate by way of substitution or subrogation for the benefit of the annuitants. The annuities in question were general legacies. 2 Williams on Executors (7th Am. Ed.) 442, 672. They were not charged upon the real estate. The trust fund was in terms to be constituted from the personal estate. It is incumbent upon the plaintiffs to show not only an intent to charge the real estate with the payment of the debts, but an intent to so charge as to exempt the personal. 3 Williams on Executors, 159, 185, 189; Kelsey v. Western, 2 N. Y. 507, and cases cited; 2 Redfield on Wills, 210, sub. 8. The charge on the real must be in exoneration of the personal. If that is not done, the personal is the primary fund for the payment of debts. In terms there is here no such exemption or exoneration. This, however, may be accomplished if such be the clear intent of the testator, to be gathered from the provisions of the will (Taylor v. Dodd, 58 N. Y. 335), supplemented by such extrinsic circumstances as may properly be considered. This intention may not be presumed merely from the use of formal words, or the presence of commonly employed phrases (Matter of City of Rochester, 110 N. Y. 159, 17 N. E. 740) such as are in the residuary clause in the will under consideration. In the case cited it is said that inadequacy of personalty is not suggestive of an intent to charge the realty with the payment of debts in view of the provisions of the Code permitting a resort to the real estate by the creditors of the decedent. The condition of a testator's estate at the time of making the will has been sometimes considered a material circumstance. In this case it is the main reliance of the plaintiffs. Their claim is that the condition of the testator's personal estate was such that he must have known that the annuities could not be paid unless the debts were paid out of the real estate, and that, therefore, he must have so intended. This subject is discussed in Briggs v. Carroll, 117 N. Y. 288, 292, 22 N. E. 1054, and it is there said: "The deficiency must exist when the will is executed, and be so great and obvious as to preclude any possible inference that the testator did not realize it, or that he may have expected and intended before his death to remove the difficulty. If the disparity, even though serious, is such that the testator might have been unconscious of its existence, or so dependent on estimates of value that in the decedent's judgment it might have been adequate to the burden imposed, or such that he might reasonably expect to repair the deficiency before his death, the ground for inferring an intention to charge the land would disappear." The testator died in August, 1893. The amount of his personal estate then is conceded to have been about $77,000. Whether it was the same at the time the will was made, which was January 3, 1893, does not very clearly appear. He was then apparently in good health, was the president of the bank, and was in charge thereof, along with Charles W. Mather. They had for a long time been partners in the banking business up to the incorporation of the bank in 1890, and thereafter continued to be partners in business transactions until February 1, 1892, when the partnership was dissolved, Charles W. Mather transferring to the testator all his interest in the assets of the firm of a

personal nature, and the testator agreeing to assume and pay all the debts and liabilities of the partnership. At the same date Charles W. seems to have conveyed to the testator all his interest in the New York City real estate, which I have no doubt was then deemed by them to be worth a large sum over and above the incumbrances. The debts existing against the testator at his death were mainly partnership liabilities, or renewals of such, and it is not probable that the testator, when he took the transfer of the personal assets of the firm and assumed the debts, did not have enough firm property in his hands to pay them. Besides that, he had at the date of the will at least $50,000 of the bank stock. He was, as the proofs show, a man of long and varied experience in business matters. I am not satisfied from the evidence that at the date of the will the testator had any idea that his personal property was not sufficient to pay his debts and leave a large margin. Having in view the considerations above quoted from 117 N. Y., 22 N. E., the condition of the property of testator at the date of the will, so far as appearing from the evidence, does not, I think, furnish support for the plaintiff's contention. There are some provisions of the will that are suggestive. Charles W. was given the use during his life of the residue of the real and personal estate. He was authorized to sell and convey only the real estate outside of the city of Utica. What was in Utica was to remain under the care and management of Charles. He was authorized to will it to his descendants. Special provision was made for the contingency of Charles not making a will. The annuitants were the brothers and sisters of Charles, and all older; and the testator might naturally expect that Charles would outlive the others. So that intentionally the testator held up the title of the Utica real estate to a period beyond the probable lives of the annuitants. In authorizing the sale of the real estate outside of the city of Utica, the testator recognized the contingency of such a sale being necessary or appropriate to the proper management of the estate, and to meet the exigencies that might arise. He contemplated no such contingency as to the other real estate. It seems to me that the provisions of the will above referred to rebut the idea of any intention to charge in any event the debts on the Utica real estate, and that is the main, if not only, subject of controversy. As to the real estate outside of the city of Utica, if it can be said that by reason of the authority to sell there may have been an intent to charge that with the payment of the debts or legacies, it was only in aid of the personal estate, and that is not enough. There must be a charge in exoneration of the personal. It must, therefore, I think, be held that the plaintiffs have not shown a basis for reaching the real estate or its proceeds on the ground of an intent to charge in exoneration of the personal. If debts are not by the will charged upon the real estate, the assets are not marshaled in favor of the general legatees, so as to throw the burden of the debts upon lands which pass under a residuary devise. 3 Williams on Executors, 211, 214; 1 Story, Eq. § 565; Hoes v. Van Hosen, 1 N. Y. 120, 122; Nagle v. McGinniss, 49 How. Prac. 193; Rogers v. Rogers, 3 Wend. 503, 20 Am. Dec. 716; Gray v. Missionary Soc. (Sup.) 2 N. Y. Supp. 878, 880.

The foregoing considerations lead to the conclusion that the plaintiffs have not shown a right to reach the real estate in controversy for the purpose of obtaining, by way of substitution or subrogation, a fund for the payment of the annuity they represent.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

Jones, Townsend & Rudd, for appellants.

S. M. Lindsley, Geo. C. Morhouse, and George S. Klock, for respondents.

PER CURIAM. Judgment affirmed, with costs, on opinion of MERWIN, J., delivered at special term. All concur, except HISCOCK, J., not sitting; SPRING, J., concurring in result only.